IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

Keith Owen Campbell;
Larry A. Campbell; and
West Virginia Citizens Defense League, Inc., a
    West Virginia nonprofit corporation,

           Plaintiffs,                Civil Action No. 5:11-cv-00069-FPS

              v.                    (Judge Stamp)

City of Wheeling, a West Virginia municipal
    corporation;
Robert G. Matheny, personally and in his     FIRST AMENDED COMPLAINT
    official capacity as the Chief of Police of
    the City of Wheeling;
Matthew Kotson, personally and in his official
    capacity as a member of the Wheeling
    Police Department;
Rusty Jewell, personally and in his official
    capacity as a member of the Wheeling
    Police Department;
Unknown Officer No. 2, personally and in his
    official capacity as a member of the
    Wheeling Police Department,

           Defendants

Come now the Plaintiffs, Keith Owen Campbell, Larry A. Campbell, and West Virginia

Citizens Defense League, Inc., by and through their undersigned counsel, and complain of the

Defendants as follows:

## **PARTIES**

1.    Plaintiff Keith Owen Campbell is a natural person and a resident of the State of West

       Virginia.  Keith Owen Campbell has, at all times relevant in this case, resided in Ohio

County, West Virginia and, as of the date this action was filed, resides within the City of Wheeling.

2. Keith Owen Campbell is an honorably-discharged veteran of the United States Marine Corps and served overseas in Operation Desert Shield/Desert Storm.

3. Keith Owen Campbell is currently admitted to practice law in the State of New Jersey and the Commonwealth of Pennsylvania, and currently practices law in Washington, Pennsylvania.

4. At all times relevant in this case, Keith Owen Campbell has been able to lawfully possess a firearm under federal law and the laws of the State of West Virginia.

5. Keith Owen Campbell holds and, at all times relevant in this case, has held, a valid license to carry concealed pistols and revolvers issued pursuant to W.Va. Code § 61-7-4.

6. Keith Owen Campbell regularly openly carries a handgun for personal protection at all times and places where he may lawfully do so and, occasionally carries his handgun concealed.

7. Plaintiff Larry A. Campbell is a natural person and a resident of the City of Wheeling.

8. Larry Campbell is the father of Keith Owen Campbell.

9. Larry Campbell was born in the year 1942.

10. Keith Owen Campbell was born in the year 1966.

11. Larry Campbell is an honorably-discharged veteran of the United States Army and served two tours of combat duty in Vietnam.

12. Larry Campbell holds and, at all times relevant in this case, has held, a valid license to carry concealed pistols and revolvers issued pursuant to W.Va. Code § 61-7-4.

13. Larry Campbell frequently carries a concealed handgun for personal protection.

14. Larry Campbell never carries his handgun openly because of his fear of the same type of abuse and harassment as he witnessed his son endure at the KFC on Wheeling Island around noon on December 4, 2010, as alleged *infra*.

15. Plaintiff West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), is a West Virginia nonprofit corporation.

16. WVCDL is a nonpartisan, all-volunteer, grassroots organization of concerned West Virginians who support an individual's right to keep and bear arms for defense of self, family, home and state, and for lawful hunting and recreational use, as protected by the West Virginia Constitution and the Second Amendment of the United States Constitution.

17. WVCDL has members throughout the State of West Virginia, including members who reside in or frequently visit the City of Wheeling.  WVCDL brings this action on behalf of itself and its members.

18. Keith Owen Campbell is a member of WVCDL.

19. Many WVCDL members, including Keith Owen Campbell, regularly carry handguns for personal protection at all times and places they may lawfully do so.

20. Defendant City of Wheeling is a municipal corporation organized under the constitution and laws of the State of West Virginia and a "person" within the meaning of 42 U.S.C. § 1983.

21. The City of Wheeling, through its police department, is responsible for executing and administering the laws, customs, practices, and policies at issue in this action.

22. The City of Wheeling, through its police department, is presently enforcing the challenged laws, customs and practices against Plaintiffs' interests.

23. Defendant Robert G. Matheny (hereinafter "Chief Matheny") is the Chief of Police of the City of Wheeling, and as such is responsible for executing and administering the City of Wheeling's laws, customs, practices, and policies. In that capacity, Chief Matheny has enforced and is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

24. Defendant Matthew Kotson (hereinafter "Officer Kotson") is and, at all times relevant in this case, has been, a member of the Wheeling Police Department. In that capacity, Officer Kotson has enforced and is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

25. Defendant Rusty Jewell (hereinafter "Sgt. Jewell") is and, at all times relevant in this case, has been, a member of the Wheeling Police Department. In that capacity, Sgt. Jewell has enforced and is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

26. Defendant Unknown Officer No. 2 is and, at all times relevant in this case, has been, a member of the Wheeling Police Department. In that capacity, Unknown Officer No. 2 has enforced and is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.  The true identity of Unknown Officer No. 2 is presently unknown to Plaintiffs. Plaintiffs anticipate establishing his true identity through discovery and intend, upon discovering his true identity, to amend their pleadings and serve a summons and complaint upon Unknown Officer No. 2.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

28. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are located in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

29. On or about noon, Saturday, December 4, 2010, plaintiffs Keith Owen Campbell and Larry Campbell patronized the KFC (formerly known as Kentucky Fried Chicken) restaurant located at 120 Zane Street in the City of Wheeling.

30. Upon entering KFC, Keith Owen Campbell was carrying on the right hip of his person a Taurus Millennium Pro .45 caliber pistol that was carried openly, in plain sight, in a Fobus retention holster.

31. KFC had no signage posted indicating that firearms were prohibited on the premises. At no time did any manager or employee of KFC ask Keith Owen Campbell to conceal his handgun or leave the premises.

32. Upon entering KFC, Keith Owen Campbell and Larry Campbell ordered and paid for their meals, proceeded through the buffet line, located a table, and seated themselves.

33. Upon being seated, Keith Owen Campbell bowed his head and said a prayer of Grace.

34. Upon the conclusion of his prayer and upon raising his head and opening his eyes, Keith Owen Campbell was alarmed to find a black figure appearing next to him on his left.

35. Upon turning his head to the left and noticing the figure to be the uniform of a Wheeling Police Officer, Keith Owen Campbell attempted to ask what the matter was.

36. The then-unidentified officer (later identified as Officer Kotson) was wearing a standard Wheeling city police uniform and gear.

37. Throughout this initial encounter, the then-unidentified officer (later identified as Officer Kotson) was standing in and actively obstructing Keith Owen Campbell's sole path of egress from the area in which he had been sitting.

38. From the time Keith Owen Campbell arrived at KFC to the time he was initially accosted by the then-unidentified officer (later identified as Officer Kotson), Keith Owen Campbell did not violate any law; was not involved in any violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct; and did not, through his conduct, cause or provoke any disturbance.

39. To Plaintiffs' knowledge, there was no 911 call to the police, no complaint of any type from the other patrons or staff of the restaurant or any reason why Keith Owen Campbell would be the object of the then-unidentified officer's (later identified as Officer Kotson) concern.

40. Before Keith Owen Campbell could finish uttering a single word, the then-unidentified officer (later identified as Officer Kotson) accosted Keith Owen Campbell and loudly barked, "Why are you carrying a gun?" The then-unidentified officer (later identified as Officer Kotson) was accompanied by another Wheeling police officer, Unknown Officer

No. 1, whose identity is presently unknown to Plaintiffs. Unknown Officer No. 1 was wearing a standard Wheeling city police uniform and gear.

41. Keith Owen Campbell responded, "Because I'm allowed to. It's perfectly legal."

42. Keith Owen Campbell then informed the then-unidentified officer (later identified as Officer Kotson) that a similar incident recently occurred between himself and an Ohio County deputy sheriff and that a letter to Sheriff Butler remedied the situation and Keith Owen Campbell since had not been harassed or stopped by any member of the Ohio County Sheriff's Department.

43. The then-unidentified officer (later identified as Officer Kotson) then demanded that Keith Owen Campbell produce identification.

44. Keith Owen Campbell stated, "I do not consent to this" but produced his driver's license and again informed the then-unidentified officer (later identified as Officer Kotson) that openly carrying a properly-holstered handgun is a lawful activity.

45. The then-unidentified officer (later identified as Officer Kotson) then acknowledged to Keith Owen Campbell that openly carrying a properly-holstered handgun is a lawful activity.  However, Officer Kotson then said, "However, I have a duty to ensure you are legal to carry it."

46. Keith Owen Campbell then replied that the officer must have reasonable suspicion or probable cause to detain him and asked the then-unidentified officer (later identified as Officer Kotson) to identify his "reasonable suspicion" or "probable cause" for stopping Keith Owen Campbell.

47. The then-unidentified officer (later identified as Officer Kotson) then stated that the fact that Keith Owen Campbell was carrying a handgun in a restaurant was suspicious and

sufficient grounds for detention.  He further stated, "I have the right to make sure you are legal. I have to make sure that you don't have a restraining order against you and that you're not otherwise prohibited from carrying a gun and that the gun is legal."

48. Keith Owen Campbell then replied that the then-unidentified officer (later identified as Officer Kotson) was incorrect and that a police officer could not indiscriminately stop and detain a person who was peaceably and openly carrying a properly-holstered handgun.

49. The then-unidentified officer (later identified as Officer Kotson) then demanded to know whether Keith Owen Campbell "had a permit for the gun."

50. Keith Owen Campbell replied that he has a West Virginia license to carry concealed pistols and revolvers.

51. Keith Owen Campbell also stated that his license to carry concealed pistols and revolvers had nothing to do with whether he could openly carry a handgun, as the State of West Virginia requires no license to openly carry a handgun.  Keith Owen Campbell further informed the then-unidentified officer (later identified as Officer Kotson) that his concealed carry permit had as much relevance in this situation as did his library card.

52. The then-unidentified officer (later identified as Officer Kotson) continued to insist that Keith Owen Campbell produce "a permit for the gun."

53. Upon the further demand of the then-unidentified officer (later identified as Officer Kotson), Keith Owen Campbell stated, "I don't consent to this" but produced and displayed his West Virginia license to carry concealed pistols and revolvers.

54. Keith Owen Campbell then proceeded to ask the then-unidentified officer (later identified as Officer Kotson) whether the officer stopped every vehicle on the streets to verify that their drivers were licensed as required by law.

55. The then-unidentified officer (later identified as Officer Kotson) then replied in the negative.

56. The then-unidentified officer (later identified as Officer Kotson) then seized Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers and stepped away from Keith Owen Campbell.

57. At this time, because his driver's license and license to carry concealed pistols and revolvers had been seized by the then-unidentified officer (later identified as Officer Kotson), Keith Owen Campbell reasonably believed he was not free to leave.

58. The then-unidentified officer (later identified as Officer Kotson) then initiated a radio call to his dispatcher in which the officer informed his dispatcher of his encounter with Keith Owen Campbell.  At this point, approximately ten minutes had elapsed since the then-unidentified officer's (later identified as Officer Kotson) initial contact of Keith Owen Campbell.

59. The then-unidentified officer (later identified as Officer Kotson) then again asked Keith Owen Campbell why he was carrying a handgun in a restaurant.

60. Keith Owen Campbell then replied that he carries his handgun everywhere he may legally carry it.

61. The then-unidentified officer (later identified as Officer Kotson) then stated that there are many places in West Virginia where a person may not legally carry a handgun, but did not state that the KFC restaurant in which Keith Owen Campbell was dining was such a

place.  Officer Kotson did, however, state that it was "improper" to carry an exposed firearm in a restaurant.

62. Keith Owen Campbell then replied that there are very few places in West Virginia where he cannot legally carry a handgun.

63. The then-unidentified officer (later identified as Officer Kotson) then stated that, for example, a person could not carry a gun into a bar.

64. Keith Owen Campbell replied that the then-unidentified officer (later identified as Officer Kotson) was incorrect and that West Virginia has no location-specific restrictions on carrying a firearm in restaurants or bars.

65. The then-unidentified officer (later identified as Officer Kotson) then stated, in an extremely threatening tone: "Go ahead and take your gun into a bar and see what happens to you."

66. Keith Owen Campbell then stated that he was not going to argue.

67. The then-unidentified officer (later identified as Officer Kotson) then stated that he would not argue either. The then-unidentified officer (later identified as Officer Kotson) then called the police dispatcher and requested a supervisor be dispatched to the restaurant.

68. The then-unidentified officer (later identified as Officer Kotson) then returned Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers.

69. Keith Owen Campbell then asked Officer Kotson, "Am I free to leave or am I being detained?"

70. The then-unidentified officer (later identified as Officer Kotson) then stated that Keith Owen Campbell was free to leave. However, he actively obstructed Keith Owen Campbell's sole path of egress. Furthermore, he told Keith Owen Campbell that he had

called a supervisor and that the supervisor wanted to talk with Keith Owen Campbell.  At this point, Keith Owen Campbell reasonably believed that he was being detained and was not free to leave.

71.   At this point, in response to a request by Keith Owen Campbell that he identify himself, the then-unidentified officer identified himself to Keith Owen Campbell as "Kotson."

72.   Shortly thereafter, two additional City of Wheeling police officers unknown to Plaintiffs, Unknown Officers Nos. 2 and 3, responded to the scene and approached Keith Owen Campbell from his left, where Officer Kotson and Unknown Officer No. 1 were standing. Unknown Officers Nos. 2 and 3 were wearing standard Wheeling city police uniforms and gear.

73.   Unknown Officer No. 2 asked Keith Owen Campbell what type of gun he had.

74.   Keith Owen Campbell told Unknown Officer No. 2 that he was carrying a Taurus Millennium Pro .45 in a retention holster on his right side and motioned towards it with his head.

75.   Unknown Officer No. 2 then replied, "Nice," and traversed from Keith Owen Campbell's left, going behind Larry Campbell and stopping on Keith Owen Campbell's right side, next to Larry Campbell.

76.   Unknown Officer No. 2 then asked why Keith Owen Campbell was leaning to his left. Keith Owen Campbell replied that he did not want in any way to do anything that might be construed as him trying to touch the weapon for fear of being tazed.

77.   Unknown Officer No. 2 then replied: "Oh, we won't taze you.  We'll shoot you."

78.   Keith Owen Campbell's apprehension, already prevalent enough, now escalated to the point that it was nearly palpable.  Keith Owen Campbell replied "alrighty then" and,

based upon his palpable fear of being unlawfully arrested, tasered and/or shot, remained motionless until Sgt. Jewell arrived.

79. Shortly thereafter, Unknown Officers Nos. 2 and 3 departed.

80. Thereafter, Sgt. Jewell responded to the scene.

81. Sgt. Jewell was the supervisor for whom Officer Kotson had called.

82. Sgt. Jewell appeared approximately ten minutes after Officer Kotson called for a supervisor.

83. Sgt. Jewell was wearing a standard Wheeling city police uniform and gear.

84. Sgt. Jewell proceeded to demand that Keith Owen Campbell show his driver's license and license to carry concealed pistols and revolvers.

85. Keith Owen Campbell stated that Officer Kotson had already seized his driver's license and license to carry concealed pistols and revolvers and verified them over the police radio. Officer Kotson then stated that he had taken them and ran them and that they "came back clean."

86. Sgt Jewell then repeated his demand that Keith Owen Campbell show his driver's license and license to carry concealed pistols and revolvers.

87. Keith Owen Campbell stated, "I don't consent to this" but produced his driver's license and license to carry concealed pistols and revolvers to Sgt. Jewell.

88. Sgt. Jewell then called the police dispatcher and requested a verification of Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers and a general background check on Keith Owen Campbell.

89. Sgt. Jewell then asked Keith Owen Campbell to hand over his handgun.

90. Keith Owen Campbell replied that he would not touch his handgun in the presence of the police officers in light of the events that had already transpired.  Keith Owen Campbell further stated that the police had no right to seize the handgun from him and that he did not consent to them taking it but that he would not physically resist.

91. Sgt. Jewell then moved to Keith Owen Campbell's right side, slightly behind the chair Keith Owen Campbell was sitting in and proceeded to attempt to seize Keith Owen Campbell's handgun by attempting to remove it from its holster on Keith Owen Campbell's person.

92. Sgt. Jewell was initially unable to seize Keith Owen Campbell's handgun from its holster, a Fobus retention holster commonly used by law enforcement officers.

93. After his unsuccessful initial attempt to seize Keith Owen Campbell's handgun from its holster, Sgt. Jewell placed his left hand on Keith Owen Campbell's right shoulder and applied downward pressure on Keith Owen Campbell's person while again attempting to seize Keith Owen Campbell's handgun by attempting to remove it from its holster.  This effort was unsuccessful.

94. While maintaining and repeating his objections to the attempted seizure of his handgun, Keith Owen Campbell informed Sgt. Jewell that the holster has a strong break and that the handgun must be drawn "smartly."

95. Upon being informed of the correct procedure for drawing Keith Owen Campbell's handgun from its holster, and again applying downward pressure on Keith Owen Campbell's right shoulder, Sgt. Jewell successfully removed Keith Owen Campbell's handgun from its holster.

96.  At that point, Sgt. Jewell asked Keith Owen Campbell if the handgun was loaded.  Keith Owen Campbell informed Sgt. Jewell that the handgun was loaded and had one round in the chamber.

97.  Sgt. Jewell then stepped to the front of Keith Owen Campbell and turned his back to Keith Owen Campbell.   This movement placed Sgt Jewell to Larry Campbell's immediate left.  Larry Campbell was, at all times, seated across the table from Keith Owen Campbell.

98.  Sgt. Jewell, with Larry Campbell on his left, ejected the magazine from the pistol, and attempted to clear the chambered round of ammunition.

99.  At the time Sgt. Jewell seized the handgun from Keith Owen Campbell, the handgun's manual safety was engaged.  The handgun's design prevents a person from racking the slide while the safety is engaged.  Therefore, a person cannot rack the slide and clear a round of ammunition from the chamber while the manual safety is engaged.

100. Upon Sgt. Jewell being initially unable to clear the chambered round of ammunition from the handgun he had seized from Keith Owen Campbell, Keith Owen Campbell informed Sgt. Jewell that it would be necessary to disengage the manual safety before the slide would open.

101. Sgt. Jewell then proceeded to disengage what he believed to be the manual safety on the handgun he had seized from Keith Owen Campbell. However, he was actually attempting to pull down on the slide lock.

102. The design of Keith Owen Campbell's handgun is based on the Colt 1911 design, as are most semi-automatic handguns on the market. Anyone receiving any meaningful amount

of handgun training—especially a law-enforcement officer—should have recognized the design and operation of the handgun.

103. Anyone not understanding the operation of a firearm should not attempt to manually manipulate it—especially when a live, unexpended round of ammunition is chambered and ready to fire.

104. It was patently obvious that Sgt. Jewell did not understand the operation of Keith Owen Campbell's handgun based upon the manner in which Sgt. Jewell handled the handgun.

105. Keith Owen Campbell then pointed to the safety and told Sgt. Jewell that he needed to pull the lever straight down.

106. Sgt. Jewell then finally disengaged the manual safety, racked the slide, and attempted to remove the chambered round.

107. At the time Sgt. Jewell deactivated the handgun's safety, the handgun was in Sgt. Jewell's right hand, laid on its right side, with the open magazine well facing Sgt. Jewell's torso. Sgt. Jewell's left hand was palm-down on top of the left side of the gun in order to activate the slide. With the handgun in this position, its muzzle was pointed directly at Larry Campbell's head.

108. At this point, Larry Campbell was seated at a dining table. He turned his head to the left and immediately stared down the barrel of Keith Owen Campbell's handgun. Upon seeing the muzzle of Keith Owen Campbell's handgun pointed directly at his face by Sgt. Jewell, Larry Campbell immediately leapt out of his seat, coming to rest next to Officer Kotson (who had been standing on Larry Campbell's right) and shouted, "Don't shoot **me** with the [expletive deleted] thing!"

109. At the time Sgt. Jewell pointed the muzzle of Keith Owen Campbell's loaded handgun directly at Larry Campbell's head, more than 50 other patrons were inside the restaurant and subject to being injured or killed had Sgt. Jewell discharged Keith Owen Campbell's handgun while attempting to unload it.

110. During his service in the United States Army in Vietnam, Larry Campbell frequently engaged in combat both from helicopters and on the ground.  In the course of his service, Larry Campbell was frequently shot at both in the air and on the ground and witnessed fellow soldiers being shot and killed in action.  In the course of his service, Larry Campbell spent approximately 5,000 hours in Army helicopters and was twice in helicopters that were disabled by enemy fire and forced to land in hostile territory.

111. At this point, Larry Campbell was in grave fear of being shot while Sgt. Jewell was pointing Keith Owen Campbell's loaded handgun at him while attempting to unload it. This was evidenced by Larry Campbell's brightly red face, deepened breathing and obvious excitedness.

112. As a result of his experience in Vietnam, Larry Campbell has continuously suffered from recurrent nightmares involving military combat and other symptoms of post-traumatic stress disorder.

113. Prior to December 4, 2010, Larry Campbell's recurrent nightmares occurred approximately 2 to 3 times per month.

114. In the weeks immediately following December 4, 2010, Larry Campbell suffered recurrences of his combat nightmares on a nightly basis.

115. Although the incidence of recurrence has subsided, as of the time this action was filed, Larry Campbell continues to suffer recurrences of his combat nightmares at a rate of 2-3 times per week.

116. Officer Kotson was visibly alarmed when Sgt. Jewell pointed the muzzle of Keith Owen Campbell's loaded handgun directly at Larry Campbell.  This was evident by Officer Kotson's widened eyes and alarmed face.

117. After Sgt. Jewell unloaded Keith Owen Campbell's handgun, Sgt. Jewell took a seat at the table to the left of where Larry Campbell had been sitting and diagonally to the right of Keith Owen Campbell.

118. Sgt. Jewell then read and reported the handgun's description and serial numbers to a dispatcher and requested a report on whether the handgun had been reported stolen and a background check report on Keith Owen Campbell.

119. At this point, Larry Campbell returned to his previous seat.

120. Keith Owen Campbell then proceeded to reiterate his objections to his detention and the seizure of his handgun.

121. Sgt. Jewell reasserted that openly carrying a handgun in West Virginia was legal but that he and other police officers have a duty to make sure that the person carrying the gun and the gun itself were legal.  Sgt. Jewell then stated: "The mere carrying of a gun is suspicious and thus grounds for the stop." Sgt. Jewell further explained: "For all I know, you could be a felon or have a restraining order against you."

122. The language used by Sgt. Jewell was nearly verbatim to the language used by Officer Kotson during Officer Kotson's explanation of why he detained Keith Owen Campbell.

123. Keith Owen Campbell then stated that he was not engaging in any suspicious activity but that things would be different if he were, for example, loitering around a bank after closing time or loitering around the rear entrance of the restaurant.

124. Sgt. Jewell then reasserted, exactly as Officer Kotson had earlier, that merely carrying a handgun was, in and of itself, a suspicious activity, especially since "you don't see anyone else doing it."

125. Sgt. Jewell then stated: "The police can stop any person with a weapon at any time and run their name and the gun's numbers," and explained that that is how everyone should want it to be.

126. Thereafter, Sgt. Jewell was informed that Keith Owen Campbell and his handgun were "clear."

127. Sgt. Jewell then handed Keith Owen Campbell's unloaded handgun to him.

128. Keith Owen Campbell then stated, "I'm not touching it." Keith Owen Campbell further stated that the handgun was not in the same condition as it was seized from him and that Keith Owen Campbell wanted the handgun placed and secured in its holster loaded and in the same condition as it was seized from him.

129. Sgt. Jewell thereafter attempted, unsuccessfully at first, to reinsert the magazine into Keith Owen Campbell's handgun.

130. Upon Sgt. Jewell's initial insertion of the magazine, the magazine ejected itself because Sgt. Jewell did not lock it in place. After several attempts, Sgt. Jewell was able to get the magazine to lock in place.

131. Sgt. Jewell then attempted to chamber a round in the handgun but only managed to jam the round, necessitating his removal of the magazine and his having to clear the handgun again.

132. Sgt. Jewell then stated, "it jammed," to which Keith Owen Campbell replied, "I see that. Funny, in the 6 months since I bought it new and have owned it, it never jammed on me, not once."

133. Sgt. Jewell then replaced the loose round into the magazine and replaced the magazine into the handgun.

134. Sgt Jewell was then able to rack the slide, charging the weapon.

135. Sgt. Jewell then approached Keith Owen Campbell and walked to a position slightly behind Keith Owen Campbell and turned around so that the handgun would be properly oriented in order to return it to Keith Owen Campbell's holster.

136. Sgt. Jewell then placed the firearm into the holster.  Sgt Jewell failed to reactivate the handgun's safety by flipping it to its "up" position, as is the case on most semiautomatic handguns. Keith Owen Campbell's handgun was in a "ready to fire" state the entire time after Sgt. Jewell racked the slide and could have been discharged at any point between the time Sgt. Jewell racked the slide and the time Sgt. Jewell secured the handgun in Keith Owen Campbell's holster, which actions endangered the lives of the other officers on the scene, Plaintiffs Keith Owen Campbell and Larry Campbell, and more than 50 other patrons who were inside the restaurant at that time.

137. Sgt. Jewell assured Keith Owen Campbell that he <u>will</u> be stopped by every policeman who sees him openly carrying a handgun, every time it is seen by any Wheeling police

officer.  Sgt. Jewell then speculated that "once they get to know who you are and that you're not a bad guy, they'll probably just overlook it."

138. Keith Owen Campbell then stated that "maybe there should be a process by which people could be vetted and pre-approved so that only the good guys can carry," and added "Oh. Wait, that sounds just like the process for getting a concealed carry permit."

139. At that point, Officer Kotson, Unknown Officer No. 1, and Sgt. Jewell all left the restaurant. Only at that point was Keith Owen Campbell, in fact, free to leave and only at that point did Keith Owen Campbell reasonably believe he was free to leave.

140. At least 30 minutes elapsed between the time Officer Kotson initially accosted Keith Owen Campbell and the time all officers departed and Keith Owen Campbell reasonably believed he was actually free to leave.

141. After the officers left, an unidentified patron of the restaurant who appeared to be approximately Larry Campbell's age approached Larry Campbell and engaged Larry Campbell in conversation. This unidentified patron said that he had a concealed handgun license and, referring to the incident he had witnessed, stated, "That's exactly why I won't open carry."

142. As a result of this incident, Keith and Larry Campbell were unable to enjoy the meals they had purchased.  The total purchase price of both meals was $12.70.

143. Keith Owen Campbell and Larry Campbell were both extremely embarrassed.

144. On or about Monday, December 6, 2010, Keith Owen Campbell contacted Chief Matheny by telephone to discuss the above events.

145. During the course of the conversation between Keith Owen Campbell and Chief Matheny concerning the events of December 4, 2010, Chief Matheny stated that the open carrying

of a handgun was so unnatural and uncommon that it, in and of itself, constitutes suspicious activity for which the City of Wheeling's police officers will stop and detain a person.

146. Chief Matheny further stated that it is the standard custom, policy, and practice of the Wheeling Police Department to stop, detain, disarm, and question any individual who openly carries a handgun and that the city's police officers can and will do so with no other basis than observing a person openly carrying a handgun and that Chief Matheny will continue to instruct his officers to do so.

147. Chief Matheny further stated, "until a court directs me otherwise, this will be the policy of the Wheeling Police Department."

148. Keith Owen Campbell is a resident of the City of Wheeling and would like to carry a handgun in Wheeling in the places where it is legal to do so, but he is in fear of unlawful searches, seizures, harassment, and intimidation by the City of Wheeling and its police department for doing so on account of Defendants' customs, policies and practices articulated by Chief Matheny, Officer Kotson, and Sgt. Jewell, and enforced by the Wheeling Police Department.

149. Keith Owen Campbell is planning to file a motion for admission to the West Virginia State Bar by reciprocity and relocate his law practice to Wheeling and, as such, fears and wishes to prevent any damage to his personal and professional reputations as may be caused by his name being transmitted across police radio channels during these illegal stops.

150. The establishment and enforcement of the customs, policies, and practices of the Wheeling Police Department, as articulated by Chief Matheny, have and will cause

present and future injury to Keith Owen Campbell, Larry Campbell, and other WVCDL members by creating a chilling effect, and/or preventing their free exercise of their right to keep and bear arms for self-defense, protected by the Second Amendment to the United States Constitution and Article III, § 22 of the West Virginia Constitution.

151. The establishment and enforcement of the customs, policies, and practices of the Wheeling Police Department, as articulated by Chief Matheny, have caused and will cause present and future injury to Keith Owen Campbell, Larry Campbell, and other WVCDL members by creating a chilling effect, and/or depriving their right to be free of unreasonable searches and seizures, protected by the Fourth Amendment to the United States Constitution and Article III, § 6 of the West Virginia Constitution.

## COUNT 1: DEPRIVATION OF KEITH OWEN CAMPBELL'S RIGHT TO KEEP AND BEAR ARMS BY ALL DEFENDANTS IN VIOLATION OF THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

152. Paragraphs 1 through 151 are incorporated by reference.

153. The Second Amendment to the United States Constitution provides: "[a] well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

154. The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

155. The Second Amendment to the United States Constitution is incorporated as against the States and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *McDonald v. City of Chicago*, 561 U.S. ___, ___, 130 S.Ct. 3020, 3026 (2010).

156. The Second Amendment applies "*most notably* for self-defense within the home," *Id.* at ___, 130 S.Ct. at 3044 (emphasis added), "where the need for defense of self, family, and property is most acute[,]" *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), but it does not end there.

157. "Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in *Heller*, we held that individual self-defense is 'the central component' of the Second Amendment right." *McDonald*, 561 U.S. at ___, 130 S.Ct. at 3036 (*quoting Heller*, 554 U.S. at 599, 628) (footnote omitted). "[I]t is clear that . . . the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty[,]" *id.* at ___, 130 S.Ct. at 3042, and "this right is deeply rooted in this Nation's history and tradition." *Id.* at ___, 130 S.Ct. at 3036 (internal quotation marks and citation omitted).

158. "[T]he core right identified in *Heller* [is] the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense[.]" *U.S. v. Chester*, 628 F.3d 673, 688 (4th Cir. 2010).

159. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. "The right to keep and bear arms . . . is not the only constitutional right that has controversial public safety implications." *McDonald*, 561 U.S. at ___, 130 S.Ct. at 3045.

160. By establishing under color of law a policy of detaining and searching anyone seen carrying a firearm, regardless of whether reasonable suspicion or probable cause exist, Defendants have established and enforced—and are enforcing—under color of law, a policy of subjecting people who openly carry a handgun to unreasonable searches and seizures. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their individual right to keep and bear arms.

161. By establishing under color of law a policy of considering everyone seen carrying a firearm as a "suspect," Defendants have established and enforced—and are enforcing—under color of law, a policy that is hostile and inimical to such person's right to keep and bear arms. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their individual right to keep and bear arms.

162. By establishing under color of law a policy of seizing the firearm of anyone seen by the police officer carrying one, in order to check to see if that firearm is stolen, Defendants have established and enforced—and are enforcing—under color of law, a policy with the intended and actual purpose and effect of subjecting all persons seen carrying a firearm to an unreasonable search and seizure, in the form of obtaining and reporting serial numbers of firearms. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their individual right to keep and bear arms.

163. By establishing and enforcing under color of law a policy of running a background check of every person seen carrying a firearm, Defendants have established a policy of

subjecting all persons seen carrying a firearm to unreasonable searches and seizures. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their individual right to keep and bear arms.

164. Defendants' actions unlawfully deprived under color of law Keith Owen Campbell of his individual right to openly carry a handgun under the Second and Fourteenth amendments to the United States Constitution, on December 4, 2010.

## COUNT 2: ONGOING DEPRIVATION OF ALL PLAINTIFFS'

## RIGHT TO KEEP AND BEAR ARMS BY ALL DEFENDANTS IN VIOLATION

## OF THE SECOND AND FOURTEENTH AMENDMENTS TO

## THE UNITED STATES CONSTITUTION

165. Paragraphs 1 through 164 are incorporated by reference.

166. Defendants' actions are unlawfully depriving under color of law all Plaintiffs of their right to openly carry a handgun under the Second and Fourteenth amendments to the United States Constitution, on an ongoing basis.

## COUNT 3: DEPRIVATION OF KEITH OWEN CAMPBELL'S

## RIGHT TO KEEP AND BEAR ARMS BY ALL DEFENDANTS IN VIOLATION OF

## ARTICLE III, § 22 OF THE WEST VIRGINIA CONSTITUTION

167. Paragraphs 1 through 166 are incorporated by reference.

168. Article III, § 22 of the West Virginia Constitution provides: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

169. The *open* carrying, as opposed to *concealed* carrying, of a handgun is the constitutionally-protected mode of carrying a handgun in a public place under Article III, § 22 of the West Virginia Constitution. *See State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 377 S.E.2d 139 (1988) (declaring unconstitutional former state statute requiring a license to carry a handgun without regard to mode of carry); Syllabus Point 1, *Application of Metheney*, 182 W.Va. 722, 391 S.E.2d 635 (1990) ("Article III, Section 22 of the West Virginia Constitution gives a citizen the constitutional right to keep and bear arms; however, there is no corresponding constitutional right to keep and bear *concealed* deadly weapons." (emphasis added)). *See also The Right of Who to Bear What, When, and Where—West Virginia Firearms Law v. The Right-to-Bear-Arms Amendment*, James W. McNeely, 89 W.Va. L. Rev. 1125, 1148, 1180 (1987).

170. Defendants' actions unlawfully deprived Keith Owen Campbell of his right to openly carry a handgun under Article III, § 22 of the West Virginia Constitution, on December 4, 2010.

**COUNT 4: ONGOING DEPRIVATION OF ALL PLAINTIFFS'**

**RIGHT TO KEEP AND BEAR ARMS BY ALL DEFENDANTS IN VIOLATION OF**

**ARTICLE III, § 22 OF THE WEST VIRGINIA CONSTITUTION**

171. Paragraphs 1 through 170 are incorporated by reference.

172. Defendants' actions are unlawfully depriving all Plaintiffs of their right to openly carry a handgun under Article III, § 22 of the West Virginia Constitution, on an ongoing basis.

## COUNT 5: DEPRIVATION OF KEITH OWEN CAMPBELL'S

## FREEDOM OF SPEECH BY ALL DEFENDANTS IN VIOLATION OF THE

## FIRST AND FOURTEENTH AMENDMENTS TO

## THE UNITED STATES CONSTITUTION

173. Paragraphs 1 through 172 are incorporated by reference.

174. "The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.' The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (citations omitted).

175. "[T]he First Amendment 'ordinarily' denies a State 'the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence.'" *Id.* at 358 (*quoting Whitney v. California*, 274 U.S. 357, 374 (1927) (Brandeis, J., concurring)).

176. "The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech." *Id.* at 358 (*citing R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989); *U.S. v. O'Brien*, 391 U.S. 367, 376-77 (1968); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505 (1969)); *see also Willis v. Town Of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005) ("It is well established that the First Amendment protects expressive conduct as well as pure speech.").

177. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

178. Keith Owen Campbell's act of openly carrying a holstered handgun on December 4, 2010, was an act of symbolic expression designed and calculated to symbolically and expressively communicate to the world Keith Owen Campbell's support of an individual's right to keep and bear arms.

179. Keith Owen Campbell's act of openly carrying a holstered handgun on December 4, 2010, was an act of symbolic expression designed and calculated to raise public awareness of an individual's right to openly carry a handgun.

180. The acts of Keith Owen Campbell and other WVCDL members of openly carrying holstered handguns on a regular basis are acts of symbolic expression designed and calculated to symbolically and expressively communicate to the world their support of an individual's right to keep and bear arms by Keith Owen Campbell and other WVCDL members.

181. The acts of openly carrying holstered handguns on an ongoing basis by Keith Owen Campbell and other WVCDL members are acts of symbolic expression designed and calculated to raise public awareness of an individual's right to openly carry a handgun.

182. By establishing under color of law a policy of detaining and searching anyone seen carrying a firearm, regardless of whether reasonable suspicion or probable cause exist, Defendants have established and enforced—and are enforcing—under color of law, a policy of subjecting people who openly carry a handgun to unreasonable searches and seizures. The purpose and intent of such policy is to prevent and chill Keith Owen

28

Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their freedom of speech by symbolic or expressive conduct.

183. By establishing under color of law a policy of considering everyone seen carrying a firearm as a "suspect," Defendants have established and enforced—and are enforcing—under color of law, a policy that is hostile and inimical to such person's right to keep and bear arms. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their freedom of speech by symbolic or expressive conduct.

184. By establishing under color of law a policy of seizing the firearm of anyone seen by the police officer carrying one, in order to check to see if that firearm is stolen, Defendants have established and enforced—and are enforcing—under color of law, a policy with the intended and actual purpose and effect of subjecting all persons seen carrying a firearm to an unreasonable search and seizure, in the form of obtaining and reporting serial numbers of firearms. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their freedom of speech by symbolic or expressive conduct.

185. By establishing and enforcing under color of law a policy of running a background check of every person seen carrying a firearm, Defendants have established a policy of subjecting all persons seen carrying a firearm to unreasonable searches and seizures. The purpose and intent of such policy is to prevent and chill, under color of law, Keith Owen Campbell, Larry Campbell, WVCDL's members, and others in their exercise of their freedom of speech by symbolic or expressive conduct.

186. Defendants' policies are designed to chill under color of law and, based upon Defendants' own contention that the open carrying of handguns is unusual in and around the City of Wheeling, are having the desired effect of preventing and chilling, Plaintiffs and others in the exercise of their First Amendment right to symbolically and expressively communicate with their fellow citizens by choosing to carry their handguns openly rather than concealed.

187. Defendants' policies violated under color of law Keith Owen Campbell's freedom of speech under the First and Fourteenth amendments to the United States Constitution on December 4, 2010.

## COUNT 6: ONGOING DEPRIVATION OF ALL PLAINTIFFS' FREEDOM OF SPEECH BY ALL DEFENDANTS IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

188. Paragraphs 1 through 187 are incorporated by reference.

189. Defendants' policies violate under color of law all Plaintiffs' freedom of speech under the First and Fourteenth amendments to the United States Constitution on an ongoing basis.

## COUNT 7: DEPRIVATION OF KEITH OWEN CAMPBELL'S FREEDOM OF SPEECH BY ALL DEFENDANTS IN VIOLATION OF ARTICLE III, § 7 OF THE WEST VIRGINIA CONSTITUTION

190. Paragraphs 1 through 189 are incorporated by reference.

191. Defendants' policies violated under color of law Keith Owen Campbell's freedom of speech under Article III, § 7 of the West Virginia Constitution on December 4, 2010.

**COUNT 8: ONGOING DEPRIVATION OF ALL PLAINTIFFS'**

**FREEDOM OF SPEECH BY ALL DEFENDANTS IN VIOLATION**

**OF ARTICLE III, § 7 OF THE WEST VIRGINIA CONSTITUTION**

192. Paragraphs 1 through 191 are incorporated by reference.

193. Defendants' policies violate under color of law all Plaintiffs' freedom of speech under Article III, § 7 of the West Virginia Constitution on an ongoing basis.

**COUNT 9: VIOLATION OF ALL PLAINTIFFS' RIGHT TO EQUAL PROTECTION**

**BY ALL DEFENDANTS UNDER THE**

**FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

194. Paragraphs 1 through 193 are incorporated by reference.

195. Defendants' customs, policies and practices have the intended purpose and actual effect of treating Keith Owen Campbell, other members of WVCDL, and other persons who are openly carrying a handgun differently than other persons with respect to the administration and enforcement of the criminal laws of the State of West Virginia, based solely on the fact that such persons are openly carrying a handgun.

196. This conduct subjects Keith Owen Campbell, other WVCDL members, and other persons to invidious discrimination, and constitutes a present and ongoing violation of their right to Equal Protection secured by the Fourteenth Amendment to the United States Constitution, facially and as applied against Plaintiff WVCDL's members, including plaintiff Keith Owen Campbell.

**COUNT 10: UNLAWFUL SEIZURE (1) OF KEITH OWEN CAMPBELL BY OFFICER**

**KOTSON, CITY OF WHEELING AND CHIEF METHENY**

**IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO**

**THE UNITED STATES CONSTITUTION**

197. Paragraphs 1 through 196 are incorporated by reference.

198. The Fourth Amendment to the United States Constitution provides, in pertinent part: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

199. Under the Fourth Amendment, the government may not detain an individual even momentarily without reasonable, objective grounds, with few exceptions. *U.S. v. Mendenhall*, 446 U.S. 544, 551 (1980) ("The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." (internal quotation marks and citations omitted)).  *See also Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *U.S. v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

200. "The Fourth Amendment permits an officer to make an investigative detention or stop **_only_** if supported 'by a reasonable and articulable suspicion that the person seized is engaged in **_criminal activity_**.'" *U.S. v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011) (*quoting Reid v. Georgia*, 448 U.S. 438, 440 (1980)) (emphasis added).

201. "We [are] concern[ed] about the inclination of the Government toward using whatever facts are present, no matter how innocent, as indicia of suspicious activity. . . . [A]n officer and the Government must do more than simply label a behavior as 'suspicious' to

make it so. The Government must also be able to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *Id.* at 248 (citations omitted).

202. In *Florida v. J.L.*, 529 U.S. 266, 272 (2000), the Supreme Court of the United States held that there is no "firearm exception" to the Fourth Amendment and that the simple act of carrying a firearm is not, in and of itself, suspicious activity constituting reasonable and articulable suspicion to justify an investigative detention or stop under the Fourth Amendment.

203. There is no law of the State of West Virginia that prohibits or requires a license to openly carry a handgun in most public places. *See* W.Va. Code § 61-7-3 (1989) (license required only to carry a concealed weapon); *State ex rel. West Virginia Div. of Nat. Resources v. Cline*, 200 W.Va. 101, 112, 488 S.E.2d 376, 387 (1997) (Maynard, J., dissenting) (describing individual's right to openly carry a handgun in most public places in West Virginia without a license); Greg Stone, *Packing Heat-And Few People React*, The Sunday Gazette-Mail, July 7, 1996, at 1A.   *Compare* W.Va. Code § 61-7-3 (1989) (requiring a license only to carry a concealed weapon) *with* W.Va. Code § 61-7-14 (1989) (right of property owner to "prohibit the carrying openly or concealing of any firearm or deadly weapon on property under his or her domain"). *See also State v. Bell*, 211 W.Va. 308, 314, 565 S.E.2d 430, 436 (2002).

204. On December 4, 2010, during his initial encounter with Keith Owen Campbell, Officer Kotson unlawfully seized plaintiff Keith Owen Campbell in violation of the Fourth Amendment to the United States Constitution.

205. This unlawful seizure of plaintiff Keith Owen Campbell, in violation of the Fourth Amendment to the United States Constitution, on December 4, 2010, as described beginning in Paragraph 39, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 11: FALSE IMPRISONMENT (1) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

206. Paragraphs 1 through 205 are incorporated by reference.

207. When Officer Kotson initially accosted Keith Owen Campbell and blocked Keith Owen Campbell's path of egress during their initial encounter on December 4, 2010, as described beginning in Paragraph 39, Officer Kotson unlawfully detained Keith Owen Campbell without proper legal process.

208. The false imprisonment of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 39, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 12: ASSAULT (1) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

209. Paragraphs 1 through 208 are incorporated by reference.

34

210. When Officer Kotson initially accosted Keith Owen Campbell, blocked Keith Owen Campbell's path of egress, as described beginning in Paragraph 39, Officer Kotson intentionally caused Keith Owen Campbell to apprehend harmful or offensive contact.

211. The assault of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 39, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 13: UNLAWFUL SEIZURE OF KEITH OWEN CAMPBELL'S DRIVER'S LICENSE AND LICENSE TO CARRY CONCEALED PISTOLS AND REVOLVERS BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

212. Paragraphs 1 through 211 are incorporated by reference.

213. When Officer Kotson seized Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 56, Officer Kotson unlawfully seized those documents in violation of the Fourth Amendment to the United States Constitution.

214. This unlawful seizure of Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 56, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling

to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 14: FALSE IMPRISONMENT (2) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

215. Paragraphs 1 through 214 are incorporated by reference.

216. When Officer Kotson seized Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 56, Officer Kotson unlawfully detained Keith Owen Campbell without proper legal process.

217. The false imprisonment of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 56, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 15: UNLAWFUL SEIZURE (2) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY
## IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

218. Paragraphs 1 through 217 are incorporated by reference.

219. When Officer Kotson informed Keith Owen Campbell that a supervising officer was en route and wanted to talk to him and caused Keith Owen Campbell to believe he was not

free to leave, as described beginning in Paragraph 69, Officer Kotson unlawfully seized plaintiff Keith Owen Campbell in violation of the Fourth Amendment to the United States Constitution.

220. This unlawful seizure of plaintiff Keith Owen Campbell, in violation of the Fourth Amendment to the United States Constitution, on December 4, 2010, as described beginning in Paragraph 69, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 16: FALSE IMPRISONMENT (3) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

221. Paragraphs 1 through 220 are incorporated by reference.

222. When Officer Kotson informed Keith Owen Campbell that a supervising officer was en route and wanted to talk to him and caused Keith Owen Campbell to believe he was not free to leave, as described beginning in Paragraph 69, Officer Kotson unlawfully detained Keith Owen Campbell without proper legal process.

223. The false imprisonment of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 69, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 17: ASSAULT (2) OF KEITH OWEN CAMPBELL BY OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

224. Paragraphs 1 through 223 are incorporated by reference.

225. When Officer Kotson and informed Keith Owen Campbell that a supervising officer was en route and wanted to talk to him and caused Keith Owen Campbell to believe he was not free to leave, as described beginning in Paragraph 69, Officer Kotson intentionally caused Keith Owen Campbell to apprehend harmful or offensive contact.

226. The assault of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 69, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 18: ACTUAL THREAT OF EXCESSIVE FORCE BY UNKNOWN OFFICER NO. 2, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

227. Paragraphs 1 through 226 are incorporated by reference.

228. When Unknown Officer No. 2 stated, "Oh, we won't taze you.  We'll shoot you," as described in Paragraph 77, Unknown Officer No. 2 made an actual threat of an unlawful and excessive use of force against Keith Owen Campbell, in violation of the Fourteenth Amendment to the United States Constitution.

229. The actual threat of excessive use of force by Unknown Officer No. 2 against plaintiff Keith Owen Campbell on December 4, 2010, as described in Paragraph 77, was a

proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 19: FALSE IMPRISONMENT (3) OF KEITH OWEN CAMPBELL BY UNKNOWN OFFICER NO. 2, CITY OF WHEELING AND CHIEF METHENY

230. Paragraphs 1 through 229 are incorporated by reference.

231. When Unknown Officer No. 2 stated, "Oh, we won't taze you.  We'll shoot you," as described in Paragraph 77, Unknown Officer No. 2 unlawfully detained Keith Owen Campbell without proper legal process.

232. The false imprisonment of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 77, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 20: ASSAULT (3) OF KEITH OWEN CAMPBELL BY UNKNOWN OFFICER NO. 2, CITY OF WHEELING AND CHIEF METHENY

233. Paragraphs 1 through 232 are incorporated by reference.

234. When Unknown Officer No. 2 stated, "Oh, we won't taze you.  We'll shoot you," as described in Paragraph 77, Unknown Officer No. 2 intentionally caused Keith Owen Campbell to apprehend harmful or offensive contact.

235. The assault of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 77, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

## COUNT 21: UNLAWFUL SEIZURE (2) OF KEITH OWEN CAMPBELL'S DRIVER'S LICENSE AND LICENSE TO CARRY CONCEALED PISTOLS AND REVOLVERS BY SGT. JEWELL, OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

236. Paragraphs 1 through 235 are incorporated by reference.

237. When Sgt. Jewell seized Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 84, Sgt. Jewell unlawfully seized those documents in violation of the Fourth Amendment to the United States Constitution.

238. This unlawful seizure of Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 84, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

**COUNT 22: FALSE IMPRISONMENT (4) OF KEITH OWEN CAMPBELL BY SGT.**

**JEWELL, OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY**

239. Paragraphs 1 through 238 are incorporated by reference.

240. When Sgt. Jewell seized Keith Owen Campbell's driver's license and license to carry concealed pistols and revolvers on December 4, 2010, as described beginning in Paragraph 84, Sgt. Jewell unlawfully detained Keith Owen Campbell without proper legal process.

241. The false imprisonment of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 84, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

**COUNT 23: SEARCH AND SEIZURE (1) OF KEITH OWEN CAMPBELL'S HANDGUN**

**BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION**

**OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE**

**UNITED STATES CONSTITUTION**

242. Paragraphs 1 through 241 are incorporated by reference.

243. Sgt. Jewell's removal of Keith Owen Campbell's handgun from its holster, as described beginning in Paragraph 89, constituted an unlawful seizure of Keith Owen Campbell's handgun in violation of the Fourth Amendment to the United States Constitution.

244. This unlawful seizure of Keith Owen Campbell's handgun on December 4, 2010, as described beginning in Paragraph 89, was a proximate result of the practices, policies,

and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 24: BATTERY (1) OF KEITH OWEN CAMPBELL
### BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

245. Paragraphs 1 through 244 are incorporated by reference.

246. When Sgt. Jewell initially attempted to remove Keith Owen Campbell's handgun from its holster, as described in Paragraph 91, Sgt. Jewell acted without Keith Owen Campbell's consent and committed an unwanted and offensive contact with Keith Owen Campbell's person.

247. The battery of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 91, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 25: BATTERY (2) OF KEITH OWEN CAMPBELL
### BY SGT. JEWELL, \CITY OF WHEELING AND CHIEF METHENY

248. Paragraphs 1 through 247 are incorporated by reference.

249. When Sgt. Jewell initially attempted to remove Keith Owen Campbell's handgun from its holster, as described in Paragraph 93, Sgt. Jewell acted without Keith Owen Campbell's

consent and committed an unwanted and offensive contact with Keith Owen Campbell's person.

250. The battery of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 93, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 26: BATTERY (3) OF KEITH OWEN CAMPBELL

### BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

251. Paragraphs 1 through 250 are incorporated by reference.

252. When Sgt. Jewell initially attempted to remove Keith Owen Campbell's handgun from its holster, as described in Paragraph 95, Sgt. Jewell acted without Keith Owen Campbell's consent and committed an unwanted and offensive contact with Keith Owen Campbell's person.

253. The battery of plaintiff Keith Owen Campbell on December 4, 2010, as described beginning in Paragraph 95, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

**COUNT 27: SEARCH AND SEIZURE (2) OF KEITH OWEN CAMPBELL'S HANDGUN BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

254. Paragraphs 1 through 253 are incorporated by reference.

255. Sgt. Jewell's removal of the magazine and chambered bullet from Keith Owen Campbell's handgun, as described beginning in Paragraph 98, constituted a separate, unlawful search and seizure, in violation of the Fourth Amendment to the United States Constitution.

256. This unlawful seizure of the magazine and chambered bullet in Keith Owen Campbell's handgun on December 4, 2010, as described beginning in Paragraph 98, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

**COUNT 28: SEARCH AND SEIZURE (3) OF KEITH OWEN CAMPBELL'S HANDGUN BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

257. Paragraphs 1 through 256 are incorporated by reference.

258. Sgt. Jewell searched Keith Owen Campbell's handgun for its serial numbers, as described beginning in Paragraph 118, without a warrant or probable cause to believe Keith Owen Campbell's handgun was stolen or that the serial numbers would otherwise reveal

evidence of any crime, in violation of the Fourth Amendment to the United States Constitution.

259. This unlawful search and seizure of the serial numbers of Keith Owen Campbell's handgun on December 4, 2010, as described beginning in Paragraph 118, was a proximate result of the practices, policies, and customs of the City of Wheeling and would not have occurred but for the official policy of the City of Wheeling to have its police officers stop and detain a person openly carrying a handgun without any further basis, on the assumption that openly carrying a handgun is *per se* a suspicious activity.

### COUNT 29: ASSAULT OF LARRY CAMPBELL

### BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

260. Paragraphs 1 through 259 are incorporated by reference.

261. By pointing the muzzle Keith Owen Campbell's loaded handgun at Larry Campbell while handling and attempting to unload it, as described beginning in Paragraph 108, Sgt. Jewell intentionally caused Larry Campbell to apprehend harmful or offensive contact, namely that he was about to be shot.

### COUNT 30: WANTON ENDANGERMENT OF LARRY CAMPBELL

### BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

262. Paragraphs 1 through 261 are incorporated by reference.

263. W.Va. Code § 61-7-12 provides, in pertinent part: "Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or

fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both."

264. W.Va. Code § 55-7-9 provides: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

265. As a direct and proximate result of the manner in which Sgt. Jewell handled Keith Owen Campbell's handgun while attempting to unload it, as described beginning in Paragraph 97, Sgt. Jewell wantonly created a substantial risk of death or serious bodily injury to Larry A. Campbell.

## COUNT 31: INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS UPON LARRY CAMPBELL BY ALL DEFENDANTS

266. Paragraphs 1 through 265 are incorporated by reference.

267. Defendants' conduct against plaintiff Larry Campbell was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

268. Defendants acted intentionally or recklessly when it was certain or substantially certain emotional distress would result from his conduct.

269. Defendants' actions caused plaintiff Larry Campbell to suffer severe emotional distress.

270. The emotional distress suffered by plaintiff Larry Campbell was so severe that no reasonable person could be expected to endure it.

## COUNT 32: WANTON ENDANGERMENT (1) OF KEITH OWEN CAMPBELL BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

271. Paragraphs 1 through 270 are incorporated by reference.

272. As a direct and proximate result of the manner in which Sgt. Jewell handled Keith Owen Campbell's handgun while attempting to unload it, as described beginning in Paragraph 97, Sgt. Jewell wantonly created a substantial risk of death or serious bodily injury to Keith Owen Campbell and every other person in the restaurant at the time he so handled Keith Owen Campbell's handgun.

## COUNT 33: ASSAULT (3) OF KEITH OWEN CAMPBELL
## BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

273. Paragraphs 1 through 272 are incorporated by reference.

274. As a direct and proximate result of the manner in which Sgt. Jewell handled Keith Owen Campbell's handgun while returning it to Keith Owen Campbell's person, as described beginning in Paragraph 136, Sgt. Jewell intentionally caused Keith Owen Campbell to apprehend harmful or offensive contact.

## COUNT 34: WANTON ENDANGERMENT (2) OF KEITH OWEN CAMPBELL
## BY SGT. JEWELL, CITY OF WHEELING AND CHIEF METHENY

275. Paragraphs 1 through 274 are incorporated by reference.

276. As a direct and proximate result of the manner in which Sgt. Jewell handled Keith Owen Campbell's handgun while returning it to Keith Owen Campbell's person, as described beginning in Paragraph 136, Sgt. Jewell wantonly created a substantial risk of death or serious bodily injury to Keith Owen Campbell and every other person in the restaurant at the time he so handled Keith Owen Campbell's handgun.

## COUNT 35: RECKLESS INFLICTION OF EMOTIONAL DISTRESS
## UPON KEITH OWEN CAMPBELL BY ALL DEFENDANTS

277. Paragraphs 1 through 276 are incorporated by reference.

278. As a result of the conduct of the Officer Kotson, Sgt. Jewell and Unknown Officer No. 2, Keith Owen Campbell felt extremely humiliated.

279. On the following day, December 5, 2010, Keith Owen Campbell feared leaving his house and being harassed again by Wheeling police officers.

280. Defendants' conduct against plaintiff Keith Owen Campbell was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

281. Defendants acted recklessly when it was certain or substantially certain emotional distress would result from his conduct.

282. Defendants' actions caused plaintiff Keith Owen Campbell to suffer severe emotional distress.

283. The emotional distress suffered by plaintiff Keith Owen Campbell was so severe that no reasonable person could be expected to endure it.

**COUNT 36: ACTUAL AND ONGOING THREAT OF FUTURE UNLAWFUL DETENTIONS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (1)**

284. Paragraphs 1 through 283 are incorporated by reference.

285. Through the statements of Sgt. Jewell described in Paragraph 137, Defendants have made an actual and ongoing threat of future, unlawful detentions of plaintiff Keith Owen Campbell and other WVCDL members who openly carry handguns within the City of Wheeling, without probable cause or reasonable suspicion, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT 37: ACTUAL AND ONGOING THREAT OF FUTURE UNLAWFUL DETENTIONS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (2)

286. Paragraphs 1 through 285 are incorporated by reference.

287. Through the statements of Chief Matheny described beginning in Paragraph 145, Defendants have made an actual and ongoing threat of future, unlawful detentions of plaintiff Keith Owen Campbell and other WVCDL members who openly carry handguns within the City of Wheeling, without probable cause or reasonable suspicion, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT 38: DESTRUCTION OF PROPERTY BY SGT. JEWELL, OFFICER KOTSON, CITY OF WHEELING AND CHIEF METHENY

288. Paragraphs 1 through 287 are incorporated by reference.

289. As a direct and proximate result of Defendants' actions, plaintiffs Keith Owen Campbell and Larry Campbell were each unable to enjoy the meals they purchased at KFC on December 4, 2010, and each suffered actual monetary damages of $6.35, which represented each meal's purchase price.

## COUNT 39: VIOLATION OF CIVIL RIGHTS OF KEITH OWEN CAMPBELL AND WVCDL MEMBERS BY CITY OF WHEELING AND CHIEF MATHENY RESULTING FROM INADEQUATE TRAINING AND SUPERVISION OF POLICE OFFICERS

290. Paragraphs 1 through 289 are incorporated by reference.

291. The City of Wheeling and Chief Matheny maintained a practice, policy, or custom of failing to train and supervise its police officers—including Officer Kotson, Sgt. Jewell, and Unknown Officer No. 2—in proper procedures for responding to the sight of a

person openly carrying a holstered handgun or upon receiving a report of a person openly carrying a holstered handgun and evaluating whether probable cause or reasonable suspicion exists to stop and detain the person under the Fourth and Fourteenth amendments to the United States Constitution.

292. The failure of the City of Wheeling and Chief Matheny to properly train and supervise police officers in proper procedures for responding to the sight of a person openly carrying a holstered handgun or upon receiving a report of a person openly carrying a holstered handgun and evaluating whether probable cause or reasonable suspicion exists to stop and detain the person under the Fourth and Fourteenth amendments to the United States Constitution, was with deliberate indifference to an obvious need for such training, and the failure to train has caused and will likely result in future incidents of individual police officers making incorrect decisions when seeing a person openly carrying a holstered handgun or upon receiving a report of a person openly carrying a holstered handgun.

293. As a proximate result of the failure of the City of Wheeling and Chief Matheny to properly train and supervise police officers in proper procedures for responding to the sight of a person openly carrying a holstered handgun or upon receiving a report of a person openly carrying a holstered handgun and evaluating whether probable cause or reasonable suspicion exists to stop and detain the person under the Fourth and Fourteenth amendments to the United States Constitution, Keith Owen Campbell was unlawfully detained in violation of the Fourth and Fourteenth amendments to the United States Constitution and Keith Owen Campbell and other WVCDL members fear future unlawful

detentions in violation of the Fourth and Fourteenth amendments to the United States Constitution for openly carrying a handgun in the City of Wheeling.

### COUNT 40: VIOLATION OF LARRY CAMPBELL'S CIVIL RIGHTS BY CITY OF WHEELING AND CHIEF MATHENY RESULTING FROM INADEQUATE TRAINING AND SUPERVISION OF POLICE OFFICERS

294. Paragraphs 1 through 293 are incorporated by reference.

295. Upon information and belief, the City of Wheeling and Chief Matheny maintained a practice, policy, or custom of failing to train and supervise its police officers, including Sgt. Jewell, in the safe handling of firearms and proper procedures for safely unloading firearms.

296. Upon information and belief, the failure of the City of Wheeling and Chief Matheny to properly train and supervise police officers in the safe handling of firearms and the proper procedures for safely unloading firearms was with deliberate indifference to an obvious need for such training, and the failure to train has caused and will likely result in future incidents of individual police officers making incorrect decisions when attempting to unload firearms.

### COUNT 41: NEGLIGENT TRAINING AND SUPERVISION AS A MATTER OF STATE LAW BY CITY OF WHEELING AND CHIEF MATHENY

297. Paragraphs 1 through 296 are incorporated by reference.

298. Upon information and belief, the City of Wheeling and Chief Matheny negligently failed to train and supervise police officers, including Sgt. Jewell, in the safe handling of firearms and proper procedures for safely unloading firearms.

299. Police officers acting in the course of their normal duties can be reasonably expected to encounter firearms that, for any number of reasons, should be unloaded to protect the safety of not only the individual officer, but other individuals at the scene where a firearm is found or seized.  When a police officer is not adequately trained on how to safely handle and unload firearms, that officer can be reasonably expected to encounter greater difficulty in unloading (or verifying the unloaded status of) a firearm and to engage in additional handling and manipulation of the firearm that greatly increases the risk of a negligent discharge.

300. As a proximate result of the failure of the City of Wheeling and Chief Matheny to train and supervise police officers, including Sgt. Jewell, in the safe handling of firearms and proper procedures for safely unloading firearms, Sgt. Jewell negligently pointed the muzzle of Keith Owen Campbell's handgun at Larry Campbell while attempting to unload it and caused Larry Campbell to suffer extreme apprehension of being shot as a result of a potential negligent discharge of the handgun that reasonably could have resulted from its handling by Sgt. Jewell.

## **PRAYER FOR RELIEF**

Plaintiffs request a trial by jury on all issues triable before a jury and that judgment be entered in their favor and against Defendants as follows:

1. Actual and punitive damages for all injuries suffered by Keith Owen Campbell and Larry Campbell on December 4, 2010;

2. Preliminary and permanent injunctions on behalf of all Plaintiffs enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or

participation with them who receive actual notice of those injunctions, from enforcing each of the laws, customs, practices, and policies challenged in this action;

3. Preliminary and permanent injunctions on behalf of all Plaintiffs requiring Chief Matheny to retract the Wheeling Police Department's policy of considering every person who carries a firearm to be "suspicious" and subject to immediate detention; and requiring members of the Wheeling Police Department to be instructed, both immediately and on an ongoing basis, on proper procedures for interacting with citizens lawfully carrying firearms in a manner that does not violate an individual's constitutionally-protected rights;

4. A declaratory judgment regarding the constitutionality and lawfulness of Defendants' actions on December 4, 2010, and Defendants' ongoing policies described herein;

5. Attorney Fees and Costs for all Plaintiffs pursuant to 42 U.S.C. § 1988;

6. Costs of suit for all Plaintiffs; and

7. Any other further relief to which any or all Plaintiffs, jointly or individually, may be entitled, as this Honorable Court may deem just and appropriate.

Dated this 28th day of June, 2011,


_____s/ James M. Mullins, Jr._____
James M. Mullins, Jr.       (WV State Bar # 11129)
          Attorney for All Plaintiffs
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2011, I electronically filed the foregoing document with

the Clerk of the Court, which will send electronic notification of such filing to the following

CM/ECF participants:

Heather M. Noel
*Attorney for City of Wheeling, Robert G. Matheny, Matthew Kotson, and Rusty Jewell*
MacCorkle, Lavender & Sweeney, PLLC
2004 White Willow Way
Morgantown, WV 26505

s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
Attorney for All Plaintiffs
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com
